My name is Ed Fox, and I represent Janet Kotaska as a plaintiff in this case. This case is here on the granting of a motion for summary judgment in favor of the defendant. The district court held that Janet did not prove that she could perform the essential functions of her job because her weight restrictions purportedly prevented her from lifting the amount of weight that a handler at FedEx was required to lift. The decision is wrong because it didn't consider facts that plaintiffs in fact could and actually did do the job. There are three main points to this appeal. First, plaintiff could lift the weight. She actually did it for three weeks before she was terminated. Second, plaintiff and her co-employee testified to the weights that needed to be lifted, and they were within her lifting restrictions and with the frequency that she was required to lift weights overhead and above her waist. Third, there was clear pretext for the termination, which plaintiff has continued to argue, but it was never addressed by the district court. With regard to pretext, the reason for plaintiff's termination was set forth in a letter by Jennifer Ramos. And she put in two reasons in her letter. First thing she said was that plaintiff complained about her ability to do the work. And secondly, she said that plaintiff was required to lift 75 pounds above her waist and overhead. Both these reasons were lies. The evidence was that Janet never complained. And secondly, employees are not required nor could anybody lift 75 pounds above the waist and overhead. In fact, as noted in our brief, how the 75-pound rule was described by the defendant underwent a constant evolution by the defendant during the course of them documenting plaintiff's termination. First, when plaintiff initially worked for FedEx in 2013 before she was terminated, at the time of her termination, they said that her lifting restriction was 60 pounds forward of weight. They then said at that time that the 75 pounds was a requirement that she needed to do, that she needed to be able to lift. That's all it said. It didn't say anything about lifting the weight above the waist or overhead. Then, subsequently, the 75-pound limitation became one where in the meantime, before she got the job for the second go-around, her weight restrictions changed so that she could lift 75 pounds forward of weight. In the terminating letter, the 75-pound rule changed so that she had to now lift the weight above the waist and overhead. During the course of litigation, the 75-pound rule was so thoroughly debunked that the defendant and the district court didn't even try to use this as a reason for the termination. The fact that there was clear pretext in the context of her termination was not addressed by the district court. It was also – and remains – If we put the 75 pounds aside and accept that the district court found that there's an issue of fact as to whether or not that was required, is it your burden to prove that the employee in a handler position needs to lift something less than 15 pounds above her head, or is it FedEx's burden to prove that a handler needs to lift something more than 15 pounds above her head? That became an interesting question only because the goalpost kept shifting and kept changing when we were doing the case. It's our burden to prove that she could do the job, and there's no question about that. The problem became is that FedEx never definitively defined what the weight requirements were. They were always really vague about it. So while it's our burden to do the job, we can only address what we're being asked to address. We did that, and then when it came time for the judge to do the motion to reconsider the district court opinion, he changed the focus slightly to say that she couldn't lift the amount of weight required with the limited frequency that her restrictions permitted. If an essential function of the handler is to lift packages that are heavier than 15 pounds overhead, is she qualified? No, she's not qualified to lift packages over 15 pounds over her head, and there's no evidence that she was required to do that. Even the district court didn't find that there was an essential function to lift more than 15 pounds over her head. There just was no requirement to do that. And you could look at the defendant's brief from cover to cover, their statement of material facts. There's not a single fact stating that she needed to be able to lift over 15 pounds overhead. And with regard to the paucity of facts regarding the weight restrictions, the only two facts that the defendant ever promulgated about weight lifting requirements was the 75-pound requirement, which we've discussed, and that's in writing. And then there was an oral requirement given through testimony that the average package weight was 15 pounds, but nothing was said about this average weight of a package being 15 pounds, whether that was a 15 pounds that needed to be lifted overhead or above the waist or not. And in fact, the evidence was that heavier packages would necessarily be packed lower to the ground because it was a safety issue and it just made more sense to do that. Mr. Fox, could I ask you to address a point in the defendant's brief? I understood them to be arguing at about page 20 of their brief that the plaintiff was not actually doing the whole job of a handler during the three weeks, that she was only unloading and not loading. Is that correct? She was doing what she was required to do, and she was never given an accommodation. She didn't ask for an accommodation, did she? No, she did not ask for an accommodation, and because she didn't need one, because she could do the job. She testified at her deposition that she received accommodations. Well, her testimony on that was a little bit vague. What she testified to was that her supervisor said she would only have to unload trucks. So she did what she was asked to do, but she wasn't given an accommodation, and there was no discussion of an accommodation, and the defendant didn't present any accommodation issue, and she did the job for three weeks without complaint. And the only reason that she stopped doing the job, or she was made to stop doing the job, was not because she was unsuccessful doing the job because her supervisors were fine with her performance, but because somebody from corporate noticed that she was working and then raised an issue. And then it took roughly nearly three weeks to deal with it, and she continued until that time. So was she loading trucks or containers during those three weeks? You know, she testified that she was – to be candid, I don't remember anything in the testimony about whether she was loading trucks or not. She did what she was asked to do. Was she only unloading? I believe she was only unloading. I believe she was asked – this didn't come up very much, frankly, because the defendant didn't raise it, but she was asked to unload trucks, and that's what she did. So she did the job that she was asked to do. And that was – You have to submit to counsel to your rebuttal time. Okay. So that's what she was asked to do. She did what she was going to do. And the other issue, then, on the motion to reconsider, when the district court said we didn't present sufficient evidence to show that she could lift packages over her head within the limited frequency amount that her doctor said she could do, we have several responses to that, which were that – and it was not considered. There was pretext for her termination that wasn't considered. She did the job that she was asked to do for three weeks. She did the job with – there wasn't that much requirement to do the job of lifting overhead and above the waist, because the plaintiff testified to that, as well as her two co-employees, Lori Morales and Phil Hutchinson. So, you know, and in conclusion, if we were to try this case, we would likely win because she was able to do the job, she did the job, and her co-employee said she did the job, and the co-employee testified that the amount of weight that she needed to be able to lift, whether she was loading or unloading, were within her weight restrictions. You are into your rebuttal time now. I'm sorry? You are well into your rebuttal time now. Okay, and I'll stop at that point. If I could just ask quickly, sorry, but what's a left-hand assist for overhead lifting? So the way I understood it was that her right arm, her right shoulder, was the injured shoulder that she injured the first time she was working there. As long as she could assist with her left hand, she could lift up to 15 pounds over her head. Two-handed, just two-handed. Okay. Right. Thanks. Babcock. Thank you, Your Honor. May it please the Court, Barack Babcock on behalf of Federal Express Corporation. In two separate opinions spanning 52 pages, the district court addressed Ms. Kataska's contention that she could perform the essential functions of the handler position. The district court properly found that FedEx satisfied its burden of proof in establishing the essential functions of the sole handler position at this FedEx facility. The district court followed this court's 2013 majors versus general electric opinion by looking at the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those previously or currently holding the position. Importantly, Mr. Atherton. Counsel, the district court's first longer opinion, you're talking about how much writing was done, the first one, if I recall correctly, said that you all offered overwhelming evidence that lifting 75 pounds above the waist and overhead is essential. Is that right? Your Honor, I'm not positive. I thought the district court broke it out into what I would call four buckets of analyzing. You're talking about the original opinion. Yes, you're right, Your Honor. The original opinion, you talked about 75 pounds. And you no longer defend that theory, right? Well, Your Honor, the position requires a handler to be able to lift and manipulate packages up to 75 pounds unassisted and packages up to 150 pounds. You wrote in your brief, while a handler at the UGM station does not necessarily need to be able to lift a 75-pound package above her head. So no overwhelming evidence, that's not required, is it? I think that's right, Your Honor. I think in reality and in practice, when a handler is building cans or placing packages onto a courier's truck, I think it's extremely doubtful that a handler is lifting a package 75 pounds up to her shoulders and certainly not over a handler's head. So given the evidence that Plaintiff was doing the job satisfactorily without accommodation for those three weeks, what evidence do we have that the job required lifting in violation of her doctor's restrictions? Sure, Your Honor. First, obviously, as the discussion a few moments ago talked about what Ms. Kataska's actual testimony was on whether or not she was loading trucks. But what the evidence before the district court is several points. First, there was evidence about how many packages were traveling through that particular facility on any given day. Then there was packages by other employees. For example, Lori Broz, M-R-O-Z, testified that she reached overhead to unload packages that weighed 5 or 15 pounds on a daily basis. And that can be found. And then you have the testimony of Mr. Brosh about lifting packages above the waist roughly 50 percent of the time to load and unload cans and 33 percent of the time to load and unload trucks establishes that the volume going through that facility varies from day to day, certainly. But the requirement is that... So, Counsel, I'm sorry. I was asking for specific evidence that the job requires Plaintiff to violate her medical restrictions, which I understood to be your theory for firing her. Yes, Your Honor. The specific lifting restrictions that FedEx contends Ms. Kataska couldn't perform was lifting packages over 15 pounds up to her waist and then lifting packages over 5 pounds above her head. Her doctor said she could do 30 pounds waist to shoulder, right? Yes. And up to 15 pounds overhead, right? With an assistance for the overhead, yes. The doctor noted, talked about what the frequency or infrequency would be. As I just recorded, had a discussion about that in his opinion. Right. So, you're familiar with our decision in Miller against Illinois Department of Transportation? Yes, Your Honor. Where, in essence, the fact that the plaintiff had been succeeding, able to do the job, was pretty relevant to deciding whether he was able to handle the essential functions. Here we've got evidence that she was doing the job without complaints for three weeks. And I'm looking for some specific contradiction that would somehow undermine the probative weight that that might be given, particularly at the summary judgment stage. Well, I believe what the district court relied on, Your Honor, is looking at the factors that this court announced in the Majors' decision and also butchered that with the fact... ...that the essential functions is not enough. And your 75-pound restriction in the written description, she can satisfy. And then we have this mess of a record with respect to where the judge first says you've got overwhelming evidence on your side and then you've abandoned the theory that she has to lift 75 pounds overhead. If that were right, you would. Well, I think, Your Honor, when the district court looked at the other Majors' factors to determine what the essential functions were or are of the handler position, we still went. And under the Bassett's decision, an essential function need not encompass the majority of the employee's time or even a significant quantity of time to be essential. Rather, an essential function must be a fundamental duty of the job. And it's FedEx's position and the district court's opinion that having the sole handler at the UGN facility, the facility in question, having the ability to manipulate packages to build these cans and unload these cans and load the trucks, that there would be packages that would be above her restriction. And the district court properly held that it was Ms. Kapaska's burden to establish whether she was doing the job and whether she could meet the essential functions. So she testified. Go ahead. Go ahead, Judge Saini. Whose burden is it to prove that it's either more or less than 15 pounds that she has to lift overhead? I think, Your Honor, you're asking the question of whose burden is it to prove whether there were packages in our network that would be needed to lift overhead? Whose burden is it to prove that what she has to lift is either more or less than 15 pounds? Well, I think it's FedEx's burden to establish what the essential functions of the handler position is. And we did that by, you know, the facts are that the average weight of the packages going through that particular facility at the time was 15 pounds. And the amount of packages that were going through the network was established. And then by testimony of management and other employees about how often packages had to be lifted above the waist or above the shoulder, I believe we met that burden. Now, as far as whose burden it is to establish once the essential functions are determined, it would be Ms. Kataska's burden to establish that she could perform those duties. And that's from, you know, going as far back as 1997 in the Miller v. Illinois Department of Corrections case. Could you address the plaintiff's points regarding the Ramos letter, and specifically the assertion that plaintiff had complained she was having difficulty lifting packages overhead, and the assertion in the Ramos letter that lifting packages over the waist and overhead for weights up to 75 pounds unassisted is required in order to properly and safely build T-stacked walls? Yes, Your Honor. I mean, that is what the letter stated. You know, and that's Exhibit 5. And the corporate committee determined that she was unable to do that. And the corporate committee... Counsel, excuse me, but on summary judgment, don't we have to assume that those facts are disputed and that that letter was false in both respects? I think certainly the district court, if it was a material fact, would weigh in favor of the non-moving party, in this case, Ms. Kataska. But it's in the pretext analysis. And while the court didn't write a lot of pages on the pretext analysis, the district court did correctly articulate that it's a but-for standard. And FedEx's position is that it's not true that but-for Ms. Kataska's post-termination complaints that were raised two years earlier in 2013, that FedEx would have acted any differently. In other words, in 2013, when she had lifting restrictions that were outside what a courier had to do, they put her on a medical leave of absence, allowed her 90 days to bid on a job that she could do with or without accommodations. And after that 90-day period, when she didn't, they terminated her employment. That's the same practice that they followed in this case. Counsel, excuse me. The 2013 events, as I understand it, are not really in dispute here. The question is whether, for summary judgment purposes, we need to treat those two key points in the Ramos factor letter as false. I don't think so. And that she was required to lift packages up to 75 pounds unassisted over her head. I'm sorry for interrupting you, Your Honor. I don't believe that's the case because once the essential functions were established and Ms. Kataska couldn't meet the burden to show that she could do that, there was no reason to even get to a pretext analysis. In other words, she didn't satisfy her prima facie case, and therefore the district court didn't even need to get into it. There's room for debate about that. Do you agree that for purposes of summary judgment, we would need to treat her challenge to those points in the letter as at least disputed so that she gets the benefit? Yes, Your Honor. Absolutely. At the summary judgment stage, that is, if the plaintiff contests or disputes a fact, she gets the benefit of the doubt at the summary judgment stage because she's the nonmoving party. Mr. Babcock, your time has expired, so you'll have to wrap up. Do you have a few closing thoughts? Yes, Your Honor. We believe that the district court not only addressed Ms. Kataska's concerns in the initial pleading, but then in its motion to reconsider order, and we believe this court should affirm the district court's summary judgment decision. Thank you very much. Thank you. Mr. Fox? Yes. Thank you. Briefly, the defendant has continued in this case to talk about the fact that there was a lot of packages moving back and forth and that the average weight was 15 pounds and that 30 percent had to be overhead according to Brush's testimony and so forth. But what they want to do is then make the jump from that that necessarily then more than 15 pounds had to be lifted overhead. But that is not a true jump to make, and certainly it would cause the court to make inferences that go against the plaintiff, which it shouldn't do on summary judgment. They have never stated that an essential fact was to lift more than 15 pounds above overhead. And, in fact, plaintiff's witnesses both testify that you don't do this, and that the most that Laurie Burroughs says he lifts is 5 to 15 pounds. Phil Hutchison similarly testified you don't lift that much weight overhead. And they've all testified you don't have to go overhead that much at all anyway because there's ways of getting the stack down without having to reach up. And that's just the facts of this case. There's just no fact saying that they have to lift – whether she's loading or unloading, by the way, there's no fact that says that she has to lift more than 15 pounds over her head. And, you know, with regards to the Ramos letter, there was not even an employee who could say where they heard that she said that she complained about the work. It just came out of nowhere. And, in fact, Bradley Fowler acknowledged in an email earlier on that she denied ever making that statement. So with the fact that her witnesses and she testified herself that she could lift the weights that were required of them, plus the fact that she did the work for three weeks to the satisfaction of her supervisors, plus they lied about the reasons for her termination because, let's face it, nobody can lift 75 pounds overhead. And, you know, if I did a trial in this case, I'd bring a 75-pound dumbbell to court and challenge any of them to lift 75 pounds over their head. And to assert that they do this routinely as a matter of practice was just absurd. So for all those reasons, I believe that if this case went to trial, we would have a good chance of winning and it would be upheld because of the facts of the case that led to it. And I thank you for your time. Thank you. Our thanks to both counsel. The case is taken under advisement. And that concludes our Q&A.